UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DERRICK MOORE (#497709)

VERSUS                                          CIVIL ACTION

JAMES D. CALDWELL, JR., ET AL                   NUMBER 11-51-BAJ-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, January 31, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DERRICK MOORE (#497709)

VERSUS                                          CIVIL ACTION

JAMES D. CALDWELL, JR., ET AL          NUMBER 11-51-BAJ-SCR


**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Derrick Moore.

For the reasons which follow, the petition should be denied.


**State Court Procedural History**

Petitioner was found guilty of 12 counts armed robbery and one count attempted armed robbery in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana on May 27, 2005. Petitioner was sentenced to imprisonment for 99 years on each of the 12 armed robbery convictions and to imprisonment for 49 ½ years on the attempted armed robbery conviction, the sentences to be served consecutively and without benefit of parole, probation or suspension of sentence.

On direct appeal the petitioner asserted the following assignments of error:

1.    the trial court erred in failing to quash the indictment which was brought in violation of the petitioner's speedy trial rights;

2. petitioner's waiver of his *Miranda* rights was not knowing, voluntary and intelligent and his confession was coerced and involuntary;

3. the trial court erred in admitting into evidence two in-court identifications of the petitioner which did not possess the inherent quality of reliability; and

4. the sentences imposed are constitutionally excessive.

The Louisiana First Circuit Court of Appeal affirmed the petitioner's convictions and sentences. *State of Louisiana v. Derrick Moore*, 2006-0934 (La. App. 1st Cir. 6/8/07), 958 So.2d 1220 (Table). Petitioner sought supervisory review by the Louisiana Supreme Court. The Louisiana Supreme Court denied review. *State of Louisiana v. Derrick Deon Moore*, 2007-1505 (La. 1/25/08), 973 So. 2d 752.

Petitioner filed an application for post-conviction relief (PCRA) in the trial court on July 29, 2008, asserting two grounds for relief:

1. his confession was involuntary because it was improperly induced (breached agreement); and,

2. he was denied effective assistance of counsel at trial and on appeal.

The trial court denied the PCRA on February 12, 2009. Petitioner sought review by the Louisiana First Circuit Court of Appeal on March 11, 2009. The Louisiana First Circuit Court of Appeal denied review on August 17, 2009. *State of Louisiana v. Derrick Moore*, 2009-0523 (La. App. 1st Cir. 8/17/09). Petitioner sought review by the Louisiana Supreme Court, which was denied on

August 18, 2010.  *State ex rel. Derrick Moore v. State of Louisiana,* 2009-2049 (La. 8/18/10), 42 So.3d 395.

## Federal Habeas Corpus Application

Petitioner signed his federal habeas corpus application on January 25, 2011, and it was filed on January 27, 2011.

Petitioner raised the following grounds for relief:

(1)  his confession was involuntary because it was improperly induced (breached agreement); and ,

(2)  he received ineffective assistance of counsel.

## Applicable Law and Analysis

No evidentiary hearing is required.  Petitioner has exhausted his state court remedies.

Section 2254(d) provides as follows:

   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

   (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

3

Subsection (d)(2) of § 2254 applies to a state court's factual determination. It bars federal court relief unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence." Subsection (d)(1) provides the standard of review for questions of law and mixed questions of law and fact. *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The second clause of subsection (d)(1) refers to mixed questions of law and fact because it speaks of an "unreasonable application of ... clearly established Federal law." When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to the facts of the case. The first clause of subsection (d)(1) refers to questions of law. When the issue raised involves a purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court." *Id*.

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, _____ U.S. _____, 131 S.Ct. 1388, 1399, 179

L.Ed.2d 557 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state court knew and did. *Cullen v. Pinholster*, 131 S.Ct. at 1399. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*, at 1400. State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166 (2003).

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradict [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406, 120 S.Ct. 1495 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413, 120 S.Ct. 1495.

### Involuntary Confession Claim

In his first ground for relief, the petitioner argued that his confession was involuntary because it was improperly induced.

Specifically, the petitioner argued that his confession was involuntary because he was assured that the information provided in the confession would not be used against him. The gist of the petitioner's argument is that his confession was induced by assertions that his girlfriend would not be charged and his confession would not be used against him.[1]

In *Miranda v. Arizona*, the Supreme Court recognized that custodial interrogations, by their very nature, generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467, 86 S.Ct. 1602, 1624 (1966). *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused including the requirement that prior to the initiation of questioning, they must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to "have counsel present ... if [he] so desires." *Id*., at 468-470, 86 S.Ct., at 1624-1626. Beyond this duty to inform, *Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings. *Id*., at 473-474, 86 S.Ct., at 1627.

---

[1] Insofar as the petitioner argued that the State breached a plea agreement in violation of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495 (1971), the claim is without merit. Petitioner never agreed to, nor did he, plead guilty.

*Miranda* holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S., at 444, 475, 86 S.Ct., at 1612, 1628. There are two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141 (1986). First, the waiver of the right must be voluntary in that it was not the product of intimidation, coercion, or deception. *Id.* Second, the relinquishment must be made with a full awareness of the nature of the right being waived. *Id*. The admission of an involuntary confession is trial error subject to a harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1264-65 (1993).

For a defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and it is essential that there be a link between the coercive conduct of the police and the confession of the defendant. *Colorado v. Connelly*, 479 U.S. 157, 163-65, 107 S.Ct. 515, 519-521 (1986). Any evidence that the accused was threatened, tricked, or cajoled into a waiver will show that the defendant did not voluntarily waive his privilege. *Miranda v. Arizona*, 384 U.S., at 476, 86 S.Ct., at 1629. Trickery or deceit is only prohibited to the extent that it deprives the defendant of knowledge essential to

his ability to understand the nature of his rights and the consequences of abandoning them. *Soffar v. Cockrell*, 300 F.3d. 588, 596 (5th Cir. 2002). "Neither mere emotionalism and confusion, nor mere trickery will alone necessarily invalidate a confession." *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992) (internal quotations and citation omitted).

The standard for determining whether a confession is voluntary is whether, taking into consideration the "totality of the circumstances," the statement is the product of the accused's "free and rational" choice. *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1347 (5th Cir. 1994) (quoting *Martinez v. Estelle*, 612 F.2d 173, 177 (5th Cir. 1980)).

A confession is not rendered involuntary simply because a suspect is advised that "there are advantages to cooperating." *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1348 (5th Cir. 1994). "It is reasonable to assume that the cooperation of an arrested person often is prompted by a desire for leniency for himself or others," and statements made in such circumstances are not per se involuntary. *United States v. Robertson*, 582 F.2d 1356, 1368 (5th Cir. 1978).

Before trial, the petitioner moved to suppress the statements he made to law enforcement authorities. The state trial court conducted a pretrial motion to suppress hearing, during which state prosecutors presented testimony from Assistant District Attorney

Aaron Brooks, Det. Tillman Cox, former Louisiana State Police Det. William Poe and Baton Rouge Police Sgt. Bart Thompson.[2] The petitioner presented testimony from Melba Parker and Sgt. Bart Thompson.[3]

Brooks testified that he was contacted at home by law enforcement officers and was advised that the petitioner had been arrested and wanted to negotiate immunity for Melba Parker, his common law wife.[4] Brooks testified that he told the petitioner that he needed to provide a written proffer.[5] Because the petitioner was reluctant to write a proffer Brooks tole him to write "plea bargain" across the top of the page and advised the petitioner that if the written statement is part of plea negotiations it is not admissible.[6] Brooks testified that the petitioner wrote the proffer.[7] Brooks testified that he then entered into an agreement with the petitioner in which he agreed that Parker would not be prosecuted for the armed robberies,

---

[2] State Court Record, Vol. 8, pp. 279-348. At the time of the hearing Det. Poe was no longer a State Police officer. He was then a Special Agent with the Federal Bureau of Investigation. *Id.* at 301. He will be referred to as Det. Poe in this report.

[3] *Id.* at 351-376.

[4] *Id.* at 287-288.

[5] *Id.* at 290.

[6] *Id.*

[7] *Id.*

accessory after the fact or for the marijuana found in their residence.[8] Brooks testified that the only offered made concerned Parker; he did not offer the petitioner anything for himself.[9] Brooks testified that the petitioner appeared to be a person of normal intelligence who was familiar with the workings of the criminal justice system.[10] Brooks testified that he was unaware of anyone threatening the petitioner with physical harm, intimidating him or mistreating him.[11]

Det. Poe testified that the petitioner was advised of his *Miranda* rights and the petitioner verbally acknowledged that he understood his rights and he signed a form indicating that he understood his rights.[12] Det. Poe testified that the petitioner signed a Waiver of Rights form.[13] Det. Poe testified that after Det. Thompson, the lead case agent arrived, the officers began questioning the petitioner.[14] Det. Poe testified that during questioning the petitioner inquired about Parker and the officers advised him that Parker had been placed under arrest for possession

---

[8] *Id.* at 292.

[9] *Id.* at 294.

[10] *Id.* at 293.

[11] *Id.*

[12] *Id.* at 302-303.

[13] *Id.* at 304.

[14] *Id.* at 305.

of marijuana with intent to distribute.[15]  Det. Poe testified that
the petitioner's demeanor changed and he began asking the officers
what he could do to help Parker.[16]  Det. Poe testified that the
petitioner offered to give a full confession if he would contact
Brooks.[17]  Det. Poe testified that he was present when Brooks wrote
out the agreement not to prosecute Parker.[18]  Det. Poe testified
that after the petitioner and Brooks reached an agreement the
petitioner provided a recorded statement.[19]  Det. Poe testified that
at no time was the petitioner intimidated or coerced into making a
confession.[20]

Baton Rouge Police Det. Tillman Cox testified that he was
present when the petitioner was read his rights, signed the rights
form and waived his rights.[21]  Det. Cox testified that the
petitioner appeared to understand his rights and was not coerced,
threatened, intimidated or mistreated.[22]

Baton Rouge Police Sgt. Bart Thompson testified that after the

---

[15] *Id.* at 307.

[16] *Id.* at 308-309.

[17] *Id.* at 309-310.

[18] *Id.* at 314.

[19] *Id.* at 315.

[20] *Id.*

[21] *Id.* at 328-329.

[22] *Id.* at 329.

petitioner was arrested he was taken to the Armed Robbery Office of the Baton Rouge Police Department, which is where he first made contact with the petitioner.[23]   Sgt. Thompson testified that he confirmed the petitioner had been read his rights and had waived his rights before questioning him.[24]   Sgt. Thompson testified that he advised the petitioner that Parker had been arrested following execution of the search warrant.[25]   Sgt. Thompson testified that the petitioner was concerned that Parker not go to jail and stated that he would cooperate fully if she was not arrested or charged.[26]   Sgt. Thompson testified that he advised the petitioner that he could not make a deal but that he could contact someone from the district attorney's office to speak with the petitioner.[27]   Sgt. Thompson testified that the petitioner never sought a deal for himself.[28] Sgt. Thompson testified that Brooks was called and agreed to come to the police station.[29]   Sgt. Thompson testified that Brooks did not solicit the petitioner's participation in the agreement, told the petitioner that the case against him was airtight, and that

---

[23] *Id.* at 332.

[24] *Id.* at 332-333.

[25] *Id.* at 334(b)-335.

[26] *Id.* at 335.

[27] *Id.*

[28] *Id.* at 337.

[29] *Id.*

Brooks would work something out if that was what the petitioner wanted, but otherwise Brooks did not care.[30]   Sgt. Thompson testified that the petitioner wrote the proffer and no one told him what to write.[31] Sgt. Thompson testified that after the petitioner wrote the proffer Brooks wrote the agreement.[32] Sgt. Thompson testified that the petitioner did not assert a right to speak with an attorney, and he was never coerced, intimidated or threatened in his presence.[33]

Melba Parker testified that she was placed under arrest and taken to the police station.[34]   Parker testified that she was allowed her to see the petitioner but was not allow to speak with him.[35] Parker testified that Brooks told her that they were waiting for the petitioner and that she could go home after he did what he had to do.[36] Parker testified that sometime later she was allowed to see the petitioner again and he told her that "I'm doing this

---

[30] *Id.* at 338-339.

[31] *Id.* at 339.

[32] *Id.* at 340.

[33] *Id.* at 340-341.

[34] *Id.* at 358.

[35] *Id.* at 359.

[36] *Id.*

for you" and "I don't want no harm come to you."[37] Parker testified that the second time she saw the petitioner he asked the officers to speak with an attorney.[38] Parker testified that she was subsequently released.[39]

The state trial court denied the petitioner's motion to suppress, finding that the petitioner's confession was "free and voluntary and was not made under the influence of any fear, duress, intimidation, menaces, threats, inducements or promises."[40]

Petitioner subsequently filed a Motion to Vacate and Set Aside the Ruling of Judge Erwin and Reopen Motion to Suppress. A hearing was held on the motion on July 31, 2003, before a different judge, for the limited purpose of allowing the petitioner to offer testimony in support of the motion to suppress and the introduction of rebuttal evidence by the State.[41]

At the hearing the petitioner testified that he was arrested

---

[37] *Id.* at 361; 364.

[38] *Id.* at 363.

[39] *Id.* at 365.

[40] *Id.* at 380.

[41] *Id.* at 384; 387-388. The judge advised counsel and the petitioner that he had read and studied the transcripts of the prior hearing on the motion to suppress. *Id.* at 386. He then vacated the previous ruling and re-opened the hearing on the motion to suppress. *Id.* at 387.

on December 7, 2000 but was not read his rights.[42]    Petitioner testified that he was not questioned until he was transported to the police station.[43]    Petitioner testified that he was placed in a room and Det. Poe and Det. Cox set up an easel and poster boards with crime scene photographs on the poster boards.[44]    Petitioner testified that the officers left the room for a few minutes and when Det. Poe returned he told the petitioner he believed the petitioner was the individual in the photographs on the poster boards.[45]    Petitioner testified that after Det. Poe made that statement he told Det. Poe "I want a lawyer."[46]    Petitioner testified that Det. Poe behaved as though he did not hear the petitioner and continued to question him for approximately four hours.[47]    Petitioner testified that he constantly requested legal representation; that between 6:15 p.m. and 10:00 p.m. he requested an attorney 10 times.[48]    Petitioner testified that he also made several requests to make a telephone call but was never allowed to

---

[42] *Id.* at 390-391.

[43] *Id.* at 391-392.

[44] *Id.* at 393.

[45] *Id.* at 394.

[46] *Id.* at 397.

[47] *Id.* at 396-397.

[48] *Id.* at 398; 399.

make a call.[49] Petitioner testified that Det. Poe sat approximately a foot-and-a-half from him, cursed at him and slammed the table.[50]

Petitioner testified that Sgt. Thompson entered the interrogation room and approximately an hour or so into the interview told him that Parker had been arrested for armed robbery.[51] Petitioner testified that the officers never stated that Parker had been arrested for possession of marijuana.[52] Petitioner testified that he probably did inquire if there was something he could do to get Parker out of jail but he could not recall the specifics.[53] Petitioner testified that the officers told him because Parker was charged it was out of their hands and was up to the district attorney.[54] Petitioner testified that he probably told them to get the district attorney.[55] Petitioner testified that he understood that if he gave a full confession they would let Parker go, which is the agreement he later entered into with Brooks.[56]

Petitioner testified that when Brooks arrived, he had not been

---

[49] *Id.* at 397.

[50] *Id.* at 398-399.

[51] *Id.* at 401.

[52] *Id.* at 402.

[53] *Id.* at 404-405.

[54] *Id.* at 405.

[55] *Id.*

[56] *Id.*

read his rights, he had not waived his rights and Brooks did not advise him of his rights.[57] Petitioner testified that he told Brooks that he had requested a lawyer but the officers would not give him one and he would not answer any questions until he got a lawyer.[58] Petitioner testified that Brooks told him he was there to answer questions not ask them, that he and Parker were under arrest for armed robbery, and then Brooks cursed at him and walked out.[59]

Petitioner testified that about 20 minutes later Brooks returned and they discussed Parker's release.[60] Petitioner testified that he agreed to confess and identify individuals involved in the robberies and in exchange Parker would never be charged.[61] Petitioner testified that the agreement was conditioned on Parker not being involved in any of the robberies.[62] Petitioner testified that he did not sign the Statement of Rights form until 1:30 a.m. even though it has "18:05 Hours" written on the bottom

---

[57] *Id.* at 406.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 407.

[61] *Id.*

[62] *Id.* at 409.

of the form.[63] Petitioner testified that he did not sign the waiver of rights form until after he wrote the proffer and just before the tape recorder was placed on the table to record his statement.[64]

Petitioner testified that he was allowed to speak with Parker and told her that he understood she was arrested for armed robbery, that he was not allowed to speak with a lawyer nor make a telephone call and he did not know what else to do to get them to let her go.[65] Petitioner testified that Parker was not prosecuted and that Brooks lived up to his end of the agreement.[66] Petitioner testified that he did not complete the proffer until Brooks had completed and signed the agreement regarding Parker not being charged.[67]

The state trial court, specifically citing *Miranda*, found that no undue influence was exerted on the petitioner by law enforcement officers or Brooks, that the motivating force behind the petitioner's confession was his desire to assist Parker,[68] and denied the petitioner's motion to suppress.[69]

Consideration of the evidence before the state trial court

---

[63] *Id.* at 395.

[64] *Id.* at 409-410.

[65] *Id.* at 411-412.

[66] *Id.* at 416.

[67] *Id.* at 417-418.

[68] *Id.* at 456.

[69] *Id.* at 450-457.

supports the finding that the petitioner has not carried his burden to rebut the presumption of correctness of the trial court's factual findings by clear and convincing evidence, as he is required to do by § 2254(e)(1). Petitioner's involuntary confession claim is without merit.

## Ineffective Assistance of Counsel Claim

In is second ground for relief, the petitioner argued that he was denied effective assistance of counsel when counsel failed to object to the introduction of his confession.

To obtain habeas relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 104 S.Ct. at 2068, and that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1983).

Contrary to the petitioner's assertion, counsel did move to

suppress his confession.  The motion was denied.  Insofar as the petitioner argued that counsel was deficient for failing to object to the introduction of the proffer which was made as a result of "plea negotiations," the claim is without merit.  Even assuming, without deciding, that counsel was deficient for failing to object to the introduction of the proffer, considering the petitioner's taped confession and other evidence introduced at trial, there is no reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.

### **RECOMMENDATION**

It is the recommendation of the magistrate judge that the petition of Derrick Moore for habeas corpus relief be denied.

Baton Rouge, Louisiana, January 31, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE